## EX PARTE FORT.

### IN RE BOYD v. LEE.

1. COUNSEL FEES.—The court cannot enforce the payment of counsel fees between parties *sui juris*, in the absence of an agreement, express or implied.
2. IBID.—LIEN.—An attorney has no lien or claim on the judgment for his fees in recovering it.
3. SCOPE OF REFERENCE.—After judgment rendered, a disagreement arose between counsel and client, and an order was passed substituting other counsel, and referring it to a referee to ascertain and report what was the agreement between client and her counsel as to his fee

for his services as her attorney in the proceedings, so that the court might determine the rights of the parties. The referee reported that there was no definite agreement, but that 20 per cent. would be a reasonable compensation. *Held,* that the only matter submitted to the referee was whether there was an agreement, and his finding as to a reasonable compensation was not within the scope of the reference. His finding as to there being no agreement, approved by the Circuit Judge, affirmed.

4. ORDERS IN OPEN COURT—JURISDICTION.—Such an order of substitution and reference, passed in open court and not appealed from, is binding on the client, except in so far as it involved the jurisdictional right of passing without notice an order not contemplated by the action to which she was a party.

5. RESISTING REFEREE'S REPORT—EXCEPTIONS.—A party may be heard in opposition to a referee's report, without exceptions taken, where the "Case" does not show service or notice of the report.

6. GROUNDS OF APPEAL on rulings not necessary to the judgment, not considered.

7. SUBSTITUTION OF COUNSEL.—The court may impose restrictions on the substitution of counsel, but in this case the only restriction imposed proved unavailing to the client, as it was found that no contract existed.

Before HUDSON, J., Lexington, February, 1891.

The opinion sufficiently states the case.

*Messrs. Abney & Thomas,* for appellant.

*Messrs. Melton & Melton,* contra.

March 29, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. We will adopt in a large measure the statement of the facts of this cause as embodied in argument of Messrs. Abney & Thomas, appellant's attorneys. John W. Lee, on the 18th day of February, 1853, executed and delivered to Hugh L. Boyd a mortgage on a certain tract of land in Lexington County to secure a sealed note, dated 31st January, 1853, for $1,700. It appears that the wife of John W. Lee did not renounce her dower on this mortgage. Lee died in 1864, leaving as his heirs and distributees his widow, Mary L., and his three grandchildren, Eugene G., John W., and Joseph E. Lee.

John W. Lee subsequently died, an infant and unmarried, leaving his mother, Mary E., and his two brothers, his heirs. John W. Lee, the elder, died testate, and his widow, Mary L. Lee, became executrix of the will. Hugh L. Boyd died intestate, and his widow, E. E. Boyd, was appointed and qualified as administratrix of his estate.

Some time in the year 1869, Mrs. Boyd, as administratrix, filed her bill for the foreclosure of said mortgage in the Court of Equity for Lexington County against Mrs. Lee as executrix, and the other Lees mentioned above, asking for a sale of the mortgaged land and the application of the proceeds of sale to the payment of her debt. The executrix of Lee answered, claiming that she, as widow of John W. Lee, deceased, was entitled to dower in said land, and asked that the same should be admeasured to her before the decree for foreclosure should be passed. She also claimed homestead in the mortgaged premises, and alleged her willingness to account as executrix for the assets of her testator's estate. The other defendants made formal answer. Such proceedings were had under this bill that the claim of homestead was denied, but the executrix had admeasured to her 117 acres of land as her dower, and she was placed in possession thereof. The plaintiff had an order that the amount reported as due upon her note and mortgage be confirmed. Judgment was rendered on 26 May, 1871, ordering the mortgage held by plaintiff foreclosed, and lands, other than dower lands, sold to pay mortgage debt; in case there should be a deficiency in the proceeds of sale to pay plaintiff's debt, the plaintiff should have judgment for such deficiency. No papers or records show anything being done subsequent to 26 May, 1871, until 1877, when there seems to have been an order dismissing some motion to docket the cause. Mrs. Mary L. Lee died on the 2 April, 1888.

On May 2, 1888, Mrs. E. E. Fort (formerly Mrs. E. E. Boyd) wrote Mr. G. T. Graham, an attorney practising his profession at Lexington, informing him of Mrs. Lee's death, and requesting him to examine the records and tell her what charge he would make to take the necessary proceedings in law to sell the 117 acres assigned to Mrs. Lee as dower, the fee to be paid out of the proceeds of sale. In Mr. Graham's reply, on the next

day, he stated that he had examined the record, what he found, what he thought necessary to be done, and that for such services he would charge fifty dollars, to be paid out of the land sale, as Mrs. Fort had suggested. On the 11 May, Mrs. Fort, in acknowledging Mr. Graham's letter, requested him to take the steps necessary to have the land sold, and used these words: "When the money is made, I will collect in person or by order and pay you fifty dollars out of it as a fee for your services." Mr. Graham proceeded with his work until the spring of 1889, at which time he seemed to realize that $50 was not adequate compensation. He visited Mrs. Fort and conferred with Andrew Lee, her brother. This difference of opinion as to fee was discussed. He alleges an agreement to increase the compensation. Both Mrs. Fort and Mr. Lee deny this. The lands were sold; bid off by Mr. Graham ; he failed to comply ; they were resold, not at his risk, at a loss of more than $300 of his bid. Mrs. Fort notified him that she no longer needed his services, having retained other counsel.

In September, 1889, Judge Norton passed the following order in the cause : "It appearing to me, from statement of counsel, that matters of disagreement have lately arisen between Mrs. E. E. Fort, the petitioner herein, and her attorney, G. T. Graham, Esq., and that the said Mrs. Fort has notified Mr. Graham that she does not desire him to act longer as her attorney ; and it further appearing from such statements that Mr. Graham claims an interest in whatever amount may be recovered or received by the said Mrs. Fort under this proceeding, and for compensation of services rendered or to be rendered her as her attorney in this' behalf, and the said Graham expressing a willingness to retire from this case, provided his rights are reserved as to any claim or lien he may have in the moneys to be received by Mrs. Fort by reason of this proceeding, the same as if he were still her attorney and rendering the services agreed on; and it further appearing that the said Mrs. Fort has employed Messrs. Melton and Melton as her attorneys to act in the place and stead of the said G. T. Graham, Esq. : It is ordered, that the names of Melton & Melton be entered on the dockets of this court as appearing for Mrs. E. E. Fort in the place and stead of G. T. Graham,

Esq., without any prejudice to the right or claim of Mr. Graham to any interest he may have in whatever amount of money she may receive from the estate of John W. Lee, deceased, by reason of this proceeding. And it is further ordered, that it be referred to R. W. Shand, Esq., to ascertain and report to this court, in order that it may determine the rights of the parties, *what was the agreement between Mrs. E. E. Fort and G. T. Graham, Esq., as to the fee or compensation for his services as her attorney in and about the above stated proceeding.*"

Messrs. Melton & Melton declined to attend the reference before Mr. Shand, upon the ground that they had nothing to do with the matter before the referee. R. W. Shand, Esq., as said referee, submitted his report to the court on this matter on the 9th February, 1891, and it came on to be heard before Judge Hudson on the 27th of February, 1891. By the report of Mr. Shand, it was established "that there was no definite agreement between Mrs. Fort and Mr. Graham as to the fee to be paid Mr. Graham for the services he has rendered. If the scope of the reference (as I think it does) embraces the question of what would be a reasonable fee to Mr. Graham for his services in this matter, I find as a fact that twenty per cent. of the amount recovered for Mrs. Fort under this litigation would be a reasonable fee."

Judge Hudson declined to sign an order directing the clerk of court, in whose hands the funds were at that time, to pay 20 per cent. thereof to Mr. Graham. The Circuit Judge in his decretal order, amongst other things, held: "The finding of the referee as to the amount of the fee to which Mr. Graham is entitled is not in my judgment within the scope of the order of reference. But if it were, it would be nugatory and unavailing in this proceeding. In an action of this nature for the foreclosure of a mortgage, the attorney has no claim for his services, or lien upon the fund in court; and without the consent of parties the court is without authority to determine the amount of compensation to which Mr. Graham may be entitled for his services as attorney herein, or to order the payment of it out of the fund in court. The parties are both *sui juris*, competent to contract for themselves; and if they cannot agree, then whatever liability may

have been incurred by the plaintiff to Mr. Graham must be determined and enforced as in other matters of contract of this character by action at law, as (the parties) may be advised.''

Mr. Graham appeals from this order of Judge Hudson upon the following grounds:

1. Because the presiding judge erred in deciding that the finding of the referee, R. W. Shand, under the order of reference of September, 1889, as to the amount of the fee to which G. T. Graham, Esq., was entitled, was not within the scope of the order of reference.

2. Because the presiding judge erred in deciding that were such finding within the scope of the order of reference, it was nugatory and unavailing in this proceeding.

3. Because the presiding judge erred in deciding that in this proceeding. Mr. Graham, the attorney for Mrs. E. E. Fort, as administratrix, has no claim for his services or lien upon the fund in court; whereas he should have found from the proceedings and the report of the referee that the said Graham had a claim for his services, payable out of the fund in court.

4. Because the presiding judge erred in not finding and deciding that Mrs. Fort had consented that the court should determine the question of the fee between herself and Mr. Graham, and that the court had authority and jurisdiction to order said fee to be paid out of the fund in court.

5. Because the presiding judge erred in finding that Mrs. E. E. Fort objected to the passage of the order of reference, there being no proof before him whatever to that effect.

6. Because the presiding judge erred in deciding that Mrs. E. E. Fort was not bound by that order of reference, the same not being appealed from, but was acquiesced in, and she voluntarily appeared before said referee and took part in said proceeding.

7. Because the presiding judge erred in not confirming the report of the referee, the same not having been in any way excepted to by the said Mrs. Fort, or its findings or conclusions disputed.

8. Because the presiding judge erred in holding that Mr. Graham could not in this proceeding enforce his claim for services, but must resort to an action at law; whereas all the proofs

offered showed that he was to be paid out of the fund arising from the sale of the lands sold under this proceeding.

9. Because the presiding judge erred in declining to consider the proceedings had in behalf of Mr. Graham and dismissed the same.

10. Because the presiding judge erred in refusing the motion to confirm the report of the referee, and requiring the clerk to pay over to Mr. Graham the amount found by the referee to be a reasonable fee for him out of the funds in his hands belonging to Mrs. Fort.

This court cannot view causes like the present in any other light than as a misfortune to the legal profession, thus giving publicity to the misunderstandings of a lawyer and client between themselves. The rarity of such occurrences is their only charm. We have been greatly impressed with the ability displayed on both sides, not simply in the arguments here presented, but as well in the preparation of the case. Nothing is omitted therefrom calculated to assist the court in reaching a conclusion. From the view we take of the rights of the parties to this controversy, they are contained in a small compass. It seems to us that this court has so repeatedly, in the past decade, declared the law administered within our State limits, regulating the relation between attorney and client so far as counsel fees are concerned, that there ought no longer to be any doubt in the minds of the legal profession on that subject. Beginning with *Nimmons* v. *Stewart*, 13 S. C., 445, through *Westmoreland* v. *Martin*, 24 *Id.*, 238, and *Ex parte Lynch, in re Reeves* v. *Tappan and Gary*, 25 *Id.*, 193; down to *Hubbard* v. *The Camperdown Mills*, 25 *Id.*, 496, this court has held "that a claim for professional services against persons who are *sui juris*, or against the property of such persons, must, like a claim for any other services, rest upon contract either express or implied, made directly with the persons so sought to be charged, or with some agent or representative of such person." The foregoing is a quotation from the opinion of this court in the last stated case made by the present Chief Justice. In all the cases cited there are certain exceptions to the foregoing rule.

Then, too, this court has never interfered with the rule laid

down in *Scharlock* v. *Oland*, 1 Rich., 207, "That as to the counsel fee, the plaintiff's attorney has no lien or claim on the judgment for that matter."

Plaintiff, and her attorney, too, seemed to appreciate the propriety of some contract. At the beginning of their business relations, this matter of compensation was fixed. The alteration, if any there was afterwards, also was designed to be covered by a contract. In the first instance the fee was fixed by writing; in the latter, human memory alone supports it. Hence this contention. An express contract is not necessary. In its absence, when the relation is established, the law not only implies it, but enforces it. Was there a contract between Mrs. Fort and Mr. Graham? Mr. Shand, the referee, finds as a fact that there was not. The Circuit Judge does not disturb such finding, nor shall we, under the familiar rule of this court on that subject. Was not this the only question confided to the referee under the order of Judge Norton, made in September, 1890? The Circuit Judge so held, and after a patient and careful examination of the whole matter, we are satisfied and concur with the Circuit Judge in such conclusion. That being so, are not all the real issues between the parties to this controversy settled? We think so.

But it is due to the appellant to state that while this court concurs in the judgment of the Circuit Court in dismissing Mr. Graham's proceedings to enforce payment of his claims for professional services rendered Mrs. Fort without prejudice, we cannot agree with him that Mrs. Fort was not bound by the order of reference in a case to which she was a party and represented by counsel, where no appeal was taken therefrom. There can be no division of counsel's responsibility in such cases. It is true, not appealing from the order did not preclude her from raising the question of jurisdiction, and under the question of jurisdiction was included the power of the Circuit Judge to make an order not contemplated by the action to which she was a party, without notice to her of such order. Nor can we, in the light of the "Case," hold with appellant that Mrs. Fort could not be heard in opposition to the confirmation of the report of the referee, because no exceptions had

been filed by her thereto, for the "Case" here is silent as to the fact of service of a copy or notice of the report ten days before the court was held, upon either Mrs. Fort or her counsel. It should have been so served upon her counsel.

We have thus passed upon all the questions necessarily involved in the judgment appealed from. We cannot entertain, so as to include in our judgment, grounds of appeal not necessary to such judgment. The question raised by the second ground of appeal is an apt illustration. After the judge had decided the question before him in relation to the scope of the order of reference, he expressed himself as to what would have been his views *if* such had not been his finding. Clearly it is not the duty of this court to dissect the reasons of Circuit Judges upon hypothetical issues.

Before announcing in form our judgment here, it is proper to say that we do not intend to deny the authority of the Circuit Judges in the due administration of justice, to impose restrictions upon the transfer of the duties of attorney from one to another, when a proper proceeding is made therefor. It is due alike to attorney and client that this should be so. In this case, as before remarked, the course adopted by the judge proved unavailing to the attorney, for one reason, because the judge's order limited Mrs. Fort's liability under that proceeding to proof of contract fixing the remuneration. When the report of the referee fixed as a fact that no such contract existed, the whole matter was ended in that case.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.