

**FILED**
October 11, 2023 03:27 PM
ST-2010-CV-00672
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| **GO FAST CHARTERS, LLC,** | ) |
| | ) **CASE NO. ST-2010-CV-00672** |
| **Plaintiff,** | ) |
| | ) **ACTION FOR BREACH OF** |
| -vs- | ) **CONTRACT, NEGLIGENCE,** |
| | ) **TRESSPASS, NUISANCE** |
| **TEXACO CARIBBEAN, INC.,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Defendant.** | ) |

Cite as 2023 VI Super 58

## MEMORANDUM OPINION

¶1    **THIS MATTER** is before the Court on:

1. Kellerhals Ferguson Kroblin PLLC's Motion For Summary Judgment On Attorneys' Lien & Incorporated Memorandum Of Law ("Summary Judgment Motion"), filed on August 14, 2018;[1]

2. Go Fast's Opposition To The Kellerhals Firm's Motion For Summary Judgment ("Plaintiff's Opposition"), filed under seal on December 4, 2018;

3. Go Fast Charters, LLC's Motion To Strike Kellerhals Ferguson Kroblin PLLC's Asserted Attorney's Lien ("Motion To Strike"), filed under seal on December 4, 2018;

4. Reply To Opposition To Motion For Summary Judgment On Attorney's Lien & Opposition To Motion To Strike Attorney's Lien ("Reply & Opposition"), filed under seal on December 28, 2018;

5. Go Fast Charters, LLC's Brief Analyzing The Common Law Claim Of A Charging Lien Using The Three-Part *Banks* Analysis, filed on October 24, 2023; and

6. Kellerhals Ferguson Kroblin PLLC's Brief On Right Of Recovery Under An Attoreny's [sic] Charging Lien, filed on October 24, 2022.

¶2    Prior to addressing Kellerhals Ferguson Kroblin PLLC's Summary Judgment Motion, the Court conducted a *Banks* analysis and concluded that the Virgin Islands should adopt the common law right of an attorney's charging lien. For the reasons set forth below, the Court will: (1) deny

---

[1] While the parties use the terms "Notice of Attorneys' Lien" and "Notice of Attorney's Lien," interchangeably, the actual notice filed with the Court on July 16, 2014, is titled "Notice of Attorney's Lien."

Kellerhals Ferguson Kroblin PLLC's Motion For Summary Judgment On Attorneys' Lien & Incorporated Memorandum Of Law and (2) conduct an evidentiary hearing on the reasonableness of the fees sought. In addition, the Court will deny Go Fast Charters, LLC's Motion To Strike Kellerhals Ferguson Kroblin PLLC's Asserted Attorney's Lien.

## I.     INTRODUCTION

### A. Procedural Background

¶3     On November 29, 2010, Plaintiff Go Fast Charters, LLC ("Go Fast") filed suit against Defendant Texaco Caribbean, Inc. ("Texaco") on account of oil leakages from storage, distribution, and pumping equipment operated by Texaco at a marina run by Go Fast. Go Fast and Texaco eventually reached a settlement, and on July 10, 2017, the parties filed a Joint Stipulation and Motion To Dismiss, which was granted by this Court's Order on July 11, 2017. On April 19, 2018, Go Fast filed a motion to reopen the case for the limited purpose of adjudicating an attorney's lien, which was asserted on the settlement proceeds by Go Fast's former counsel, Kellerhalls Ferguson Kroblin, PLLC ("KFK") on July 16, 2014. On May 16, 2018, the case was reopened for the purpose of clarifying the attorney's lien placed by KFK. On September 19, 2022, the Court ordered the parties to provide briefs analyzing the common law right of an attorney's lien under the *Banks* analysis framework.[2] On October 24, 2022, both KFK and Go Fast filed briefs analyzing the common law right to an attorney's lien.

### B. Parties' arguments

¶4     KFK seeks summary judgment on its attorney's lien in its favor against Go Fast because "it has a clear and unambiguous agreement with Go Fast for payment of an outstanding bill for already provided legal services."[3] KFK alleges that the parties agreed that "in consideration for certain discounts and the acceptance of the risk of no recovery, KFK was entitled to a five percent (5%) lien on any recovery in the case."[4] KFK states that Go Fast originally agreed for KFK to provide it legal services at a reduced hourly fee rate in return for a five percent (5%) contingent fee and KFK provided the retainer letter detailing this agreement as Exhibit A.[5] KFK asserts that "[a]fter conducting significant fact and expert discovery in the case and conducting mediation, Go Fast fell significantly behind on its financial obligations to KFK."[6] KFK contends that "[t]o resolve the situation, it was agreed that Kevin D'Amour would be substituted back in as counsel for Go

---

[2] The Virgin Islands Supreme Court has stated that before conducting a *Banks* analysis, parties should be given a chance to brief the issue. *Malloy v. Reyes*, 61 V. 163, 176 (V.I. 2014) ("Here, the Superior Court erred in failing to give the parties an opportunity to brief the issue of abandonment of an easement under the *Banks* framework, and further erred by failing to conduct a *Banks* analysis at all.").

[3] Summ. J. Mot. 1.

[4] Summ. J. Mot. 1. The parties have filed their oppositions and replies under seal to preserve the specific amount settled for. Therefore, the Court will omit references to the specific settlement amount. However, the specific percentage of KFK's lien is relevant to the issue of reasonableness, and references to it will not publicly disclose the settlement amount, so it will be retained in the Court's discussion herein.

[5] Summ. J. Mot. 1.

[6] Summ. J. Mot. 1.

Fast relieving KFK of further obligations for representing Go Fast."[7]

¶5　　KFK further asserts that the parties agreed that "Go Fast would only pay a portion of its outstanding bill with KFK, however, KFK in return would be entitled to a five percent (5%) contingent fee on any recovery Go Fast achieved in the case" and that this "gave Go Fast some immediate financial relief" while KFK "obtained the prospect of a possible future recovery."[8] KFK included an email exchange between representatives for KFK and Go Fast in which the parties negotiated the five percent (5%) contingent fee, the discounted pricing, and the waiver of then-owed funds. The exchange is attached as Exhibit B. Towards the end of this exchange KFK stated:

> We agree to discount your current bill (through June 30, 2014) in the amount of $13,297.72 and in return you agree that the balance of $35,000.00 will be paid no later than Monday, July 7, 2014 . . . . As discussed previously, this discount is without prejudice to our previously agreed upon 5% lien on any recovery in the case, which we will still retain. The 5% is payable only to our firm and we have made arrangements with Leigh Fletcher with respect to that recovery. Once the funds have cleared our account, we will release your complete hard copy file to Kevin.[9]

¶6　　Go Fast then replies: "we can deliver the check Friday to your office if you wish. The funds can be drawn on immediately. I'm wiring today!"[10] Following this exchange, KFK and Go Fast arrange to internally transfer funds since both entities have accounts at the same bank, and Go Fast responds: "[w]ill do! High praise on how you worked this out for me. Please tell Chris same!"[11] Following this exchange, KFK filed a Notice of Attorney's Lien and a Notice of Limited Appearance on July 16, 2014. These Notices are attached as Exhibits C and D respectively. The lien requests that various court documents and filings be directed to KFK and "no funds shall be exchanged until said lien is satisfied or as otherwise consented to by" KFK.[12]

¶7　　KFK maintains that its contract with Go Fast is clear and unambiguous, and as such the meaning of its terms is a question of law, not fact.[13] KFK asserts that there was a written agreement that is complete, clear, and unambiguous which must be enforced according to the plain meaning of its terms.[14] Further, KFK argues the parol evidence rule precludes consideration of extrinsic evidence of any prior or contemporaneous agreements altering the agreement.[15] KFK argues that it is undisputed that Go Fast entered into an agreement with KFK for legal services, which contained a five percent (5%) contingency fee; it is undisputed that after this agreement was executed, Go Fast was given a discount on its outstanding bill in return for Go Fast's agreement

---

[7] Summ. J. Mot. 1-2.
[8] Summ. J. Mot. 2.
[9] Summ. J. Mot. Ex. B.
[10] Summ. J. Mot. Ex. B.
[11] Summ. J. Mot. Ex. B.
[12] Summ. J. Mot. Ex. C.
[13] Summ. J. Mot. 6-7.
[14] Summ. J. Mot. 7.
[15] Summ. J. Mot. 7-8.

to pay Thirty-Five Thousand Dollars ($35,000.00) of the bill and that KFK would still be entitled to five percent (5%) of any future payments to Go Fast from the case; and that since all these facts are undisputed it is proper for this Court to grant their Summary Judgment Motion.[16]

¶8    KFK contends that the agreement constitutes a charging lien over the funds recovered by Go Fast.[17] Citing to the Michigan case *Dunn v. Bennett*,[18] KFK states a charging lien is "an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit."[19] KFK argues that charging liens have long been recognized in U.S. Virgin Islands law, citing to the 2011 District Court of the Virgin Islands case *Transcaribbean Trade, Ltd. v. Misgunst Inv. Corp.*,[20] which itself cites to the Restatement (Third) of The Law Governing Lawyers. KFK states it must show that "(1) an agreement to create a lien existed between the lawyer and the client, and (2) the proceeds which would be subject to the lien were procured through the attorney's reasonable efforts."[21]

¶9    KFK then argues it had an agreement with Go Fast to provide it with discounted legal services in exchange for a five percent (5%) lien.[22] KFK states that it "also agreed to jump into the middle of a pending case that required significant work in a short period of time."[23] KFK asserts it conducted the vast majority of fact discovery and a large portion of expert discovery, pointing to its invoices attached as Exhibit E.[24] KFK contends that Go Fast failed to comply with the terms of this original agreement, so KFK stipulated to the substitution of new counsel and settled the outstanding balance at a reduced rate in exchange for five percent (5%) of any amount recovered.[25] Therefore, KFK argues, it is entitled to a charging lien.[26] Further, KFK states that because the agreement was entered into after services were already rendered, Go Fast knew that it was negotiating a charging lien and that the prosecution of the matter would be concluded by other attorneys.[27]

¶10   KFK asserts that there is no merit to Go Fast's claim that KFK did not do substantial work simply because KFK was brought in two (2) years after the initiation of the suit.[28] KFK states the original engagement agreement and five percent (5%) fee were entered into after the two (2) years of prior work was already completed.[29] KFK asserts that Go Fast is "a sophisticated development company" that "freely negotiated a contingency fee for two (2) reasons: (1) for a ten percent (10%) reduction on the hourly rates of KFK's fees and (2) for the fact that the firm would have to devote

---

[16] Summ. J. Mot. 8.

[17] Summ. J. Mot. 8.

[18] 846 N.W.2d 75 (Mich. App. Ct. 2013).

[19] *Id.* at 81.

[20] No. 96–173, 2011 U.S. Dist. LEXIS 53431 (D.V.I. May 8, 2011).

[21] Summ. J. Mot. 9.

[22] Summ. J. Mot. 9.

[23] Summ. J. Mot. 9.

[24] Summ. J. Mot. 9.

[25] Summ. J. Mot. 9.

[26] Summ. J. Mot. 9.

[27] Summ. J. Mot. 9.

[28] Summ. J. Mot. 10.

[29] Summ. J. Mot. 10.

substantial attention to the matter" as there was purportedly not much time left in discovery and "the two (2) previous attorneys representing Plaintiff had not accomplished much discovery at all."[30] KFK further asserts that Go Fast failed to pay it for this work, elected to switch attorneys again, and agreed to the contingency fee for a reduction to the fees Go Fast owed KFK although "[c]learly, Plaintiff knew more work was to be done on the case."[31]

¶11    KFK maintains that Go Fast was not under financial pressure to enter into the agreement and Go Fast's principal has funds.[32] KFK states that when it placed the lien, Go Fast's principal expressed concern that the lien said "all amounts recovered" and Attorney Kroblin explained that KFK felt disclosing the specific five percent (5%) amount would be improper, so KFK simply notified all parties that KFK had a lien extending to any recovered funds.[33] KFK asserts that after this explanation, Go Fast was satisfied and that any objection now is stale, waived, or barred by the equitable doctrine of laches.[34] KFK argues that its lien was filed on July 16, 2014, and after the initial objection noted by Go Fast, Go Fast did not file any objection and waited four (4) years until after the matter was settled and closed.[35]

¶12    KFK contends that "Go Fast cannot fail to object to the Notice of Attorney's lien, receive the advantage of the discounted fees in exchange for that lien, and then when the circumstances change and a settlement is reached, attempt to now object to the lien."[36] KFK argues that this is precisely what the doctrine of laches bars: "Go Fast had no objection to the lien when it was financially advantageous to Go Fast, but when the facts later changed and the terms of the agreement resulted in a financial obligation for Go Fast" nearly four (4) years after freely entering into the agreement, Go Fast now "claims the agreement is unfair."[37] Lastly, KFK argues there is nothing fundamentally unfair about this agreement, and had Go Fast's case been thrown out and no recovery achieved, KFK could not then argue that its agreement to cut its bill in favor of a lien would be unfair.[38] KFK seeks a declaration its lien is valid; a court order directing payment to KFK from the settlement amount; that the Court determine what that amount of monies is after reviewing the agreement under seal; and an award of prejudgment interest from the date of the settlement and post-judgment interest after judgment on this motion at the statutory rate.[39]

¶13    Go Fast maintains that KFK has not met its burden for summary judgment.[40] Go Fast also argues that KFK's fees were not reasonable; that KFK did not conduct a *Banks* analysis; that KFK omitted material language from the engagement letter; and that KFK provides no analysis to support its position that the emails between Go Fast and KFK superseded the engagement letter.[41]

---

[30] Summ. J. Mot. 10.
[31] Summ. J. Mot. 10.
[32] Summ. J. Mot. 10.
[33] Summ. J. Mot. 11.
[34] Summ. J. Mot. 11-12.
[35] Summ. J. Mot. 12.
[36] Summ. J. Mot. 12-13.
[37] Summ. J. Mot. 13.
[38] Summ. J. Mot. 13.
[39] Summ. J. Mot. 13.
[40] Pl.'s Opp'n 1.
[41] Pl.'s Opp'n 2.

Go Fast contends that KFK does not show that any work it did had anything to do with Go Fast eventually obtaining a settlement or whether KFK's asserted five percent (5%) contingency fee is reasonable.[42] Go Fast points out that KFK's contract states that the contingency fee was only operable if Go Fast was awarded damages.[43] Go Fast points to Supreme Court Rule 211.1.5(c) that requires a contingency fee to be in writing signed by the client.[44]

¶14    Go Fast further argues that KFK does not provide any legal support for its proposition that the 2014 emails supplanted the 2012 engagement letter or that the emails changed the meaning of 'awarded damages' to 'any recovery.'[45] Go Fast contends KFK does not meet its burden of showing the reasonableness of its fees under any one (1) of eight (8) factors provided by Virgin Islands Rule of Professional Conduct 211.1.5(a).[46] Go Fast argues that KFK only shows the work they did do, not all the work that was done on the case after KFK was removed from the case nor does KFK show how its work ultimately contributed to the settlement of the case.[47] Go Fast argues that KFK's citations that Go Fast is now barred by laches is not supported by the cases it cites as those cases deal with Federal Rules of Civil Procedure and do not address laches post-*Banks*.[48] Go Fast points out that the cases cited by KFK for the laches issue deal with claims by an opposing party; here KFK is the entity making a claim; and KFK has not provided any facts to support its argument that it has suffered prejudice.[49]

¶15    In its Motion To Strike, Go Fast maintains that: (1) KFK does not have a contractual right to a charging lien; (2) KRK does not have a right to additional fees; (3) KFK cannot demonstrate that it procured the settlement Go Fast obtained from Texaco; and (4) even if KFK could demonstrate that the original agreement was modified, KFK cannot demonstrate that an additional fee is reasonable.[50] Go Fast details the work done after KFK was removed including "the selection and designation of all but two of the experts (including all liability experts), the reopening of fact discovery, conducting nearly all expert discovery, defending extensive *Daubert* motions, bringing discovery motions, and drafting summary judgment briefings."[51] Go Fast also states that when Go Fast fired KFK the following issues had not been briefed: statute of limitations; causation; the economic loss rule; implied-in-fact contract theory; the new business rule; and speculative damages.[52] Further, Go Fast states it also faced litigation over a loan from PCG Credit Partners, LLC, which needed to be resolved before it could settle with Texaco and KFK did not assist in that litigation.[53]

¶16    Go Fast asserts three (3) reasons why the lien must be struck. The first, as mentioned in its

---

[42] Pl.'s Opp'n 2-3.
[43] Pl.'s Opp'n 4.
[44] Pl.'s Opp'n 4.
[45] Pl.'s Opp'n 5-6.
[46] Pl.'s Opp'n 6-7.
[47] Pl.'s Opp'n 7-8.
[48] Pl.'s Opp'n 8.
[49] Pl.'s Opp'n 8-9.
[50] Mot. To Strike 2.
[51] Mot. To Strike 5.
[52] Mot. To Strike 7.
[53] Mot. To Strike 7.

Plaintiff's Opposition, is that KFK's demanded contingency fee is not supported by the language of the contract, which states the firm will collect 5% of any recovery only if damages are awarded and damages were not.[54] Go Fast argues that the language is hardly ambiguous, and that even if it was ambiguous such clauses should be construed against the drafter, particularly when that drafter is a lawyer.[55] Go Fast also states that the email exchange does not constitute a new agreement as the emails reference the original agreement: "As discussed previously, this discount is without prejudice to our *previously agreed upon* 5% lien on any recovery in the case."[56]

¶17     Second, Go Fast argues that it paid KFK $118,769.00 in hourly fees and that the additional fee is not reasonable.[57] Go Fast points to Virgin Islands Rule of Professional Conduct 211.1.5(a), which prohibits a lawyer from charging or collecting an unreasonable fee.[58] Go Fast asserts that KFK bears the burden of proving the reasonableness of the fee and that KFK did not provide to the Court any undisputed facts supported by citation to the record as to the reasonableness of its fee.[59] Go Fast asserts that the 496.10 hours KFK spent on the case was not "substantial time and labor"; that KFK did not address the causation or liability legal issues in the case; and that KFK "stated a premature readiness to try the case on a fragile *res ipsa loquitor* theory."[60] Further, Go Fast states that Leigh Fletcher, an experienced environmental law attorney at KFK, disassociated from KFK in the beginning of 2014 and KFK did not show it had the experience or ability to litigate the environmental issues present by the case.[61] Further, Go Fast states that KFK did not have to advance Go Fast's litigation expenses or face non-payment and did in fact receive hourly fee payments, making the sought after contingent fee unreasonable.[62]

¶18     Third, Go Fast asserts that KFK did not participate in a majority of the discovery process, the drafting of dispositive motions, or the settlement negotiations that led to Go Fast's recovery, and so KFK cannot argue that its reasonable efforts procured the settlement payment.[63] Go Fast states that "[o]nly after expert discovery regarding liability, the reopening of fact discovery, the taking of soil and groundwater samples, evaluation of the resulting analyses, and *Daubert* and summary judgment briefings, did Texaco enter into meaningful settlement discussion with Go Fast."[64] Lastly, Go Fast argues that it cannot have implicitly contracted for a charging lien on any recovery, because the 2012 Engagement Letter and 2014 emails on which KFK base its argument explicitly show that it contracted for a contingency fee only if damages were awarded, not on settlement payment.[65]

---

[54] Mot. To Strike 8-12.

[55] Mot. To Strike 10.

[56] Mot. To Strike 12 (emphasis added). Go Fast added the emphasis in its Motion To Strike which the Court reproduces here.

[57] Mot. To Strike 12-14.

[58] Mot. To Strike 12.

[59] Mot. To Strike 13.

[60] Mot. To Strike 13.

[61] Mot. To Strike 13.

[62] Mot. To Strike 13-14.

[63] Mot. To Strike 17.

[64] Mot. To Strike 17.

[65] Mot. To Strike 18-19

¶19    KFK replies that Go Fast misrepresents the case and the "underlying litigation was always in essence a business interference lawsuit."[66] KFK asserts that Go Fast desired the expeditious removal of Texaco's oil tanks so that it could build its development and that no claim for contamination could have ripened until removal of the tanks.[67] KFK asserts that Go Fast's replacement counsel "claimed to be an environmental law lawyer" and utilized "environmental experts that were totally unnecessary for the prosecution of Go Fast's claims as a part of his effort to dupe Go Fast into believing [replacement counsel] was providing valuable services."[68] KFK asserts that the case was a business interference case premised on "breach of contract, trespass, and nuisance" and that KFK's own environmental lawyer stopped working on the case before her departure.[69]

¶20    KFK further replies that, after their departure, Go Fast got crushed in mediation on account of replacement counsel and that Go Fast ultimately settled for one-sixth (1/6) of the what the case was ultimately worth.[70] KFK asserts that while it did not contribute to the "botching up the case" that does not detract from "the fact that KFK substantially assisted in the litigation" and that its "previous stream lined posture . . . should have settled for no less than ten million dollars."[71] KFK additionally argues that the previous engagement letter is inoperative; the operative language is in the emails where KFK states it has a lien on "any recovery"; that the new language was negotiated as a reduction to the fees owed; that this language supersedes the previous agreement; and that this agreement is clear and unambiguous.[72]

¶21    KFK counters that it did perform substantial work as it had to jump into the middle of a pending case that required "significant work in a short period of time."[73] KFK asserts Go Fast failed to abide by the original terms of the agreement by paying the fees as required and instead entered into a new agreement—settling the outstanding fees and agreeing to a five percent (5%) lien on any recovery—after significant work had been done and substitution of counsel had been agreed to.[74] Therefore, KFK contends that Go Fast cannot argue that it "did not know exactly what it was negotiating when agreeing to the charging lien."[75] KFK further declares that Go Fast is a sophisticated agent who negotiated the lien in favor of a ten percent (10%) reduction to fees because the firm would have to perform a significant amount of work in a short time period since "there was not much time left for discovery" as "the two (2) previous attorneys representing Plaintiff had not accomplished much discovery at all[.]"[76]

¶22    KFK also argues that the Go Fast's principal knew that work had been done before entering

---

[66] Reply & Opp'n 1.
[67] Reply & Opp'n 1-2.
[68] Reply & Opp'n 2.
[69] Reply & Opp'n 2.
[70] Reply & Opp'n 2. While KFK uses the specific dollar amounts that it believes Go Fast could have settled for, the Court omits them here so as to preserve the settlement amount filed under seal.
[71] Reply & Opp'n 2.
[72] Reply & Opp'n 3-6.
[73] Reply & Opp'n 7-8.
[74] Reply & Opp'n 8.
[75] Reply & Opp'n 8.
[76] Reply & Opp'n 8.

the new agreement and knew that new counsel would have to complete the case.[77] Further, KFK states that when KFK filed its Notice of Lien, Paul Sabers ("Sabers") of Go Fast expressed concern that the Notice of Lien said "all amounts recovered," so Attorney Kroblin of KFK "then explained that KFK felt it would be improper to disclose the amount of the negotiated lien (five percent (5%))" so KFK instead simply notified all parties KFK had a lien while omitting the details of that lien.[78] KFK argues that Go Fast then dropped any objections after it was explained the lien was only for "five percent (5%) of any recovery," and thus any objection now is stale, waived, or is barred by the equitable doctrine of laches.[79]

¶23　　KFK expands on its argument that Go Fast failed to timely object, stating that despite the initial objection mentioned above by Sabers, Go Fast never filed any objection to the Notice of Lien and that Go Fast waited four (4) years to object to KFK's lien.[80] KFK cites to *St. Thomas-St. John Board of Elections v. Daniel*[81] for the rule that laches bars a plaintiff's claim when "there has been an inexcusable delay in prosecuting the claim in light of the equities of the case and prejudice to the defendant from the delay."[82] KFK cites to *Abramsen v. Bedminster*[83] to define waiver as "a voluntary and intentional abandonment or relinquishment of a known right."[84] KFK refutes Go Fast's argument that because the cases KFK cites deal with the then-applicable Federal Rules of Civil Procedure they are immaterial to the current case by asserting that, because the newly enacted Virgin Islands Rules of Civil Procedure are identical, the caselaw is persuasive.[85]

¶24　　KFK states that by failing to object to the Notice of Attorney's Lien during the pendency of the action, Go Fast has waived any objection.[86] Further, KFK argues that Go Fast cannot fail to object to the lien, receive the advantage of the discounted fees in exchange, and then attempt to object once circumstances change and a settlement is reached.[87] KFK contends that "[t]his is precisely the kind of thing barred by the doctrine of laches": Go Fast not objecting when it was financially advantageous for Go Fast, and then claiming four (4) years later that the agreement is unfair because Go Fast incurred a financial obligation towards KFK.[88] KFK maintains that the agreement is fair because, had Go Fast's case been dismissed, KFK would have received nothing under the lien.[89] KFK could not then argue the agreement to cut its bill was unfair as it assumed the risk of no recovery.[90]

---

[77] Reply & Opp'n 9.

[78] Reply & Opp'n 9.

[79] Reply & Opp'n 9.

[80] Reply & Opp'n 9.

[81] 49 V.I. 322 (V.I. 2007).

[82] *Id.* at 330 (citing first *Cook v. Wikler*, 320 F.3d 431, 438 (3d Cir. 2003); then *Churma v. United States Steel Corp.*, 514 F.2d 589, 593 (3d Cir. 1975)).

[83] 45 V.I. 3 (V.I. Super. Ct. 2002).

[84] *Id.* at 10 (citing *Murdock v. Murdock*, 526 S.E.2d 241, 246 (S.C. Ct. App. 1999)).

[85] Reply & Opp'n 10.

[86] Reply & Opp'n 10.

[87] Reply & Opp'n 10-11.

[88] Reply & Opp'n 11.

[89] Reply & Opp'n 11.

[90] Reply & Opp'n 11.

¶25     KFK further asserts that the agreement for the lien was not for prospective services, but for services already rendered, and therefore "the agreement should not be subject to the normal scrutiny given to contingency fee agreements for prospective services."[91] KFK argues that, with prospective services, the client does not know how the case "will shake out in the future," but when the services are already rendered, the client is aware of the lawyer's contribution to the case.[92] KFK then argues that such a post-services agreement is not within the rubric of an attorney's charging lien "but [is] more in the nature of a third-party financing fee."[93] KFK states that striking the lien and having the parties resolve the matter elsewhere will not resolve the matter as Texaco will not pay Go Fast from monies KFK has claimed a lien on without subjecting Texaco to liability, so the Court should resolve the case in its current posture in order to resolve the matter and close out the case.[94]

¶26     Lastly, KFK points to the bills attached to its Summary Judgment Motion as "a good starting point" for the Court to "inquire into the reasonability of the services rendered by KFK."[95] KFK states that a review of the correspondence accompanying the separation "evinces no claim that KFK failed to provide good and valuable services."[96] KFK asserts that the "bills speak for themselves" and that "were the Court to get into parole evidence it would become clear that Go Fast was the one that wanted the contingency fee option in return for discounted rates, not KFK."[97]

## B.     LEGAL STANDARD

### A.  Summary Judgment

¶27     Summary judgment is governed by Rule 56 of the Virgin Islands Rules of Civil Procedure, which states:

> A party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[98]

¶28     Or, as the Virgin Islands Supreme Court stated in *Antilles School, Inc. v. Lembach*,[99] summary judgment is appropriate when after "considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the

---

[91] Reply & Opp'n 11.
[92] Reply & Opp'n 11.
[93] Reply & Opp'n 11.
[94] Reply & Opp'n 11-12.
[95] Reply & Opp'n 12.
[96] Reply & Opp'n 12.
[97] Reply & Opp'n 12.
[98] V.I. Civ. P. 56(a).
[99] 64 V.I. 400 (V.I. 2016).

nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party."[100]

¶29    Summary judgment is a "drastic remedy" and only proper where "the pleadings, the discovery and disclosure materials on file . . . show that there is no genuine issue as to material fact[.]"[101] The nonmoving party must show in its response to a motion for summary judgment that there are "specific facts showing a genuine issue for trial."[102] In addition, "[t]he non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. Such evidence may be direct or circumstantial, but the mere possibility that something occurred in a particular way is not enough[.]"[103] For a nonmoving party to show some genuine issue of material fact for trial, "'the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla,' in support of its position."[104] Further, "[i]f the non-movant offers evidence that is 'merely colorable' or not 'significantly probative,' summary judgment may be granted."[105] Finally, the "Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party."[106]

## B. Attorney's Charging Lien – *Banks* Analysis

¶30    Black's Law Dictionary defines an attorney's lien as "[t]he right of an attorney to hold or retain a client's money or property (a retaining lien) or to encumber money payable to the client (a charging lien) until the attorney's fees have been properly determined and paid."[107] A charging lien is defined in part as "[a]n attorney's lien on a claim that the attorney has helped the client perfect, as through a judgment or settlement."[108] "The attorney's charging lien has a long common law tradition."[109] Neither the Virgin Islands Superior Court nor the Virgin Islands Supreme Court has recognized this cause of action after the Virgin Islands Supreme Court's decision in *Banks v. Int'l Rental & Leasing Corp.*[110] *Banks* directs the Court to analyze whether and how common law claims should be adopted by the courts of the Virgin Islands going forward, and directs this Court to not simply follow the Restatements published by the American Law Institute.[111]

---

[100] *Id.* at 409.

[101] *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 228 (V.I. 2013) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[102] *Williams*, 50 V.I. at 194 (V.I. 2008) (quoting FED. R. CIV. P. 56(e)).

[103] *Anthony*, 58 V.I. at 229 (quoting *Williams*, 50 V.I. at 194-95).

[104] *Anderson v. American Fed'n of Teachers*, 67 V.I. 777, 789 (V.I. 2017) (quoting *Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 527-28 (V.I. 2012)).

[105] *Pemberton Sales & Serv. v. Banco Popular de P.R.*, 877 F. Supp. 961, 965 (D.V.I. 1994).

[106] *Williams*, 50 V.I. at 195 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[107] *Lien*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[108] *Id.*

[109] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem. Hosp., Inc.*, 36 A.3d 336, 340 (Del. 2012) ("*Welsh v. Hole*, decided by Lord Chief Justice Mansfield in 1779, is the first case to authoritatively declare the existence of an attorney's charging lien.").

[110] 55 V.I. 967 (V.I. 2011).

[111] *See id.* at 984 ("Moreover, since this Court possesses the inherent authority to shape Virgin Islands common law, we are not strictly bound by section 4 to always apply the most recent Restatement provisions, since this Court's decisions constitute 'local law' that may or may not be consistent with the Restatements.").

¶31    KFK cites to *Transcaribbean Trade, Ltd. v. Misgunst Inv. Corp.*,[112] a pre-*Banks* District Court of the Virgin Islands decision that itself relies on a Restatement. The *Banks* decision directs this Court to conduct a three-prong analysis: "[t]he first step in the analysis is 'whether any Virgin Islands courts have previously adopted a particular rule'; the second step is 'determining the position taken by a majority of courts from other jurisdictions'; and the third step is 'identifying the best rule for the Virgin Islands.'"[113] Accordingly, this Court ordered the parties to brief the issue. Having reviewed the parties' briefs and arguments therein, the Court will conduct its own *Banks* analysis below.

### 1. Prior practice in Virgin Islands Courts

¶32    The first case recognizing an attorney's lien in the Virgin Islands is the 1928 case *Stafford v. Palidore*.[114] However, at issue in that case was not the common law right to an attorney's lien, but an attorney's lien provided for by a now-repealed ordinance.[115] In *Transcaribbean Trade, Ltd.*,[116] the District Court of the Virgin Islands declined to let an attorney intervene in a settlement, stating: "[a]ttorney charging liens are allowed in the Virgin Islands under limited circumstances." Citing to the Restatement (Third) of The Law Governing Lawyers § 43(2), the District Court further stated that:

> To establish entitlement to a charging lien, an attorney must show (1) an agreement to create a lien existed between the lawyer and client, and (2) the proceeds which would be subject to the lien were procured through the attorney's reasonable efforts. 'The fee claim with respect to which a lien is asserted must be advanced in good faith and with a reasonable basis in law and fact.'[117]

¶33    The only evidence in *Transcaribbean Trade, Ltd.* of any agreement was an unsigned retainer letter that stated the attorney "may enforce an attorney's lien against documents, property or money of Client in its possession or against property or money acquired by its services[.]"[118] The District Court found the unexecuted letter to be insufficient to show there was an agreement. In *Weiss v. Oat*,[119] the District Court of the Virgin Islands recognized the existence of a charging lien, but not a retaining lien "for the circumstances presented here."[120] Additionally, in *Zimmer v. VF Development, LLC*,[121] the District Court found that an engagement letter did not create a charging lien in favor of an attorney as none of the property was obtained through the efforts of

---

[112] No. 96–173, 2011 WL 1897208 (D.V.I. May 8, 2011).

[113] *Bluewater Construction, Inc. v. Hill*, 2022 VI Super 13, ¶ 192.

[114] No. 57, 1928 WL 61793 (D.V.I. Jan 10, 1928).

[115] *Id.* (attorney's lien established by Section 12 of Ordinance of December 24, 1918).

[116] No. 96–173, 2011 U.S. Dist. LEXIS 53431 (D.V.I. May 8, 2011).

[117] *Id.* at *8-9 (citations omitted) (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43(2) cmt. h (2000)).

[118] *Id.* at *9.

[119] Civil No. 2008–123, 2012 WL 1664019 (D.V.I. May 10, 2012) (unpublished).

[120] *Id.* at *6.

[121] Civil No. 2005–129, 2008 WL 5632259 (D.V.I. Jan. 29, 2008) (unpublished).

the attorney.[122] All the District Court cases relied on the Restatement.

¶34    In a footnote to an unpublished case, the Virgin Islands Supreme Court opined in *In the Matter of Rogers*:[123] "it is well established that, in the absence of explicit statutory authority to the contrary, an attorney is precluded from placing a lien on real property based on a claim for fees that has not been adjudicated by a court."[124] Notably, the lien referred to in that case, one on real property, is a retaining lien, not a charging lien. Thus, there is some prior authority recognizing this right in the Virgin Islands, although such recognition is not extensive or widespread. This prong thus promotes the adoption of the attorney's lien into the common law of the Virgin Islands.

## 2.  Courts in other jurisdictions

¶35    Almost all other jurisdictions recognize an attorney's charging lien. Thirty-two (32) jurisdictions recognize it by statute,[125] while thirteen (13) recognize it as a separate right through

---

[122] *Id.* at *3-4.

[123] S.Ct. Civ. No. 2012-0059, S.Ct. Civ. No. 2012-0042, S.Ct. Civ. No. 2012-0059, 2012 V.I. Supreme LEXIS 79 (V.I. Oct. 26, 2012) (unpublished).

[124] *Id.* at *13 n. 4 (citing *Ross v. Scannell*, 647 P.2d 1004, 1008 n.2 (Wash. 1982)).

[125] ALA. CODE § 34-3-61 (LexisNexis 2023); *Hale v. Tyson*, 79 So. 499, 501 (Ala. 1918) ("In this state we have a declared statutory lien of attorneys at law, embracing the two classes, to wit, the retaining lien and the charging lien."); ALASKA STAT. § 34.35.430 (2023); *Law Offices of Steven D. Smith, P.C. v. Ceccarelli*, 385 P.3d 841, 846 (Alaska 2016) (citing *Phillips v. Jones*, 355 P.2d 166, 172 (Alaska 1960)) ("[A] charging lien exists by statute in Alaska[.]"); ARK. CODE ANN. § 16-22-304; *Harrill & Sutter, PLLC v. Kosin*, 378 S.W.3d 135, 143-44 (Ark. 2011) ("Under the lien statute . . . the lien established in favor of the attorney attaches to the proceeds of any settlement, verdict, decision, judgment, or final order in his or her client's favor."); COLO. REV. STAT. § 13-93-114 (2023); *McBeth v. Physician Health Partners, Inc.*, Civil Action No. 17-cv-1327-WJM-KMT, 2020 U.S. Dist. LEXIS 171226, at *2 (D. Colo. Sept. 18, 2020) (unpublished) ("COLO. REV. STAT. § 13-93-114 grants an attorney 'charging' lien rights in costs and the value of a judgment or settlement."); GA. CODE ANN. § 15-19-14 (2023); *Howe & Assocs., P.C. v. Daniels*, 631 S.E.2d 356, 357 (Ga. 2006) ("The relevant statute . . . confers upon an attorney at law the right to impose a lien '[u]pon actions, judgments, and decrees for money,' and prevents the satisfaction of such an action, judgment, or decree 'until the . . . claim of the attorney for his fees is fully satisfied.'"); HAW. REV. STAT. ANN. § 507-81 (LexisNexis 2023); *Riley v. Osako*, NO. CAAP-15-0000399, 2016 Haw. App. LEXIS 318, at *2 (Haw. Ct. App. June 30, 2016) ("Under Hawaii Revised Statutes . . . Appellee had a right to an attorney's lien for the legal services they provided Riley."); IDAHO CODE § 3-205 (2023); *In re Jones*, Bankruptcy Case No. 19-40665-JMM, 2022 Bankr. LEXIS 1793, at *9 (Bankr. D. Idaho June 27, 2022) ("Finally, Idaho Code § 3-205 provides a mechanism for attorneys to attach a lien to the proceeds of their client's causes of action."); 770 ILL. COMP. STAT. ANN. 5/1 (LexisNexis 2023); *TM Ryan Co. v. 5350 S. Shore, L.L.C.*, 836 N.E.2d 803, 807 (Ill. App. Ct. 2005) ("The Attorney's Lien Act allows attorneys to file a lien on all claims, demands, or causes of action of their clients for their agreed fees, costs, and expenses."); IOWA CODE § 602.10166 (2022); *Tri City Equipment Co. v. Modern Real Estate Invest., Ltd.*, 460 N.W.2d 464, 466 (Iowa 1990) (citing 7A C.J.S. *Attorney & Client* § 357, at 707 (1980)) ("There are two general types of attorney's liens . . . . Iowa Code section 602.10116 provides for both types of lien."); KAN. STAT. ANN. § 7-108 (2023); *Lehecka v. Tier Technologies, Inc. (In re Brown)*, 109 P.3d 1212, 1215 (Kan. 2005) ("Our analysis begins with the language of the attorney's lien statute[.]"); KY. REV. STAT. ANN. § 376.460 (LexisNexis 2023); *Stone v. Dubarry*, 513 S.W.3d 325, 330 (Ky. 2016) ("Under the attorney's fee lien statute, the attorney has a 'lien upon all claims . . . put into his hands for suit or collection or upon which suit has been instituted'"); LA. STAT. ANN. § 9:5001 (2023); *Roberts v. Hanover Ins. Co.*, 338 So. 2d 158, 159 (2d Cir. 1976) ("LSA-R.S. 9:5001 grants to attorneys a privilege of first rank for their fees on judgments obtained by them and on the property recovered thereby."); MD. CODE ANN., BUS. OCC. & PROF. § 10-501 (LexisNexis 2023); *Khan v. Law Firm of Paley Rothman*, 226 A.3d 851, 856 (Md. 2020) (citing *Consol. Constr. Servs. v. Simpson*, 813 A.2d 260, 275 (Md. 2002)) ("[I]t is evident that § 10-501(a) granted attorneys 'the right to a lien on the judgment and awards for their services arising out of an action or proceeding of a client, from the

# THIS SPACE IS INTENTIONALLY LEFT BLANK

time that proceeding began.'"); MASS. ANN. LAWS ch. 221, § 50 (LexisNexis 2023); *Boswell v. Zephyr Lines, Inc.*, 606 N.E.2d 1336, 1339 (Mass. 1993) (citing *Elbaum v. Sullivan*, 183 N.E.2d 712, 713 (Mass. 1962)) ("In Massachusetts, attorneys have a statutory right to assert a charging lien securing compensation for their legal services."); MINN. STAT. § 481.13 (2023); *Thomas A. Foster & Assocs. v. Paulson*, 699 N.W.2d 1, 5 (Minn. Ct. App. 2005) (citing *Boline v. Doty*, 345 N.W.2d 285. 289 (Minn. Ct. App. 1984)) ("Derived from common law and later codified in statute, an attorney lien attaches to any recovery by the attorney in the course of representation."); MO. REV. STAT. § 484.130 (2023); *Wright v. Bartimus Frickleton Robertson & Gorny PC*, 364 S.W.3d 558, 566 (Mo. Ct. App. 2011) ("HLF relies on section 484.130 as the statutory authority for its attorney's lien."); MONT. CODE ANN. §37-61-420 (2023); *Mulroy v. Pierce*, 387 P.3d 199, 201 (Mont. 2017) ("The statute governing attorney's liens, § 37-61-420(1), MCA, provides: 'The compensation of an attorney and counselor for services is governed by agreement, express or implied, which is not restrained by law.'"); NEB. REV. STAT. ANN. § 7-108 (LexisNexis 2023); *Lewis v. Gallemore*, 121 N.W.2d 388, 391 (Neb. 2023); ("Under our statute an attorney has a lien for attorney's fees on papers and money of his client in his possession and in the hands of the adverse party in an action or proceeding from the time of giving notice of the lien to that party."); NEV. REV. STAT. ANN. § 18.015 (LexisNexis 2023); *Leventhal v. Black & LoBello*, 305 P.3d 907, 909 (Nev. 2013) (citing *Argentena Consol. Mining Co. v. Jolley Urga Wirth Woodbury & Standish*, 216 P.3d 779, 782 (Nev. 2009)) ("[A]n attorney may assert a charging lien against the client's claim or recovery under NRS 18.015."); N.H. REV. STAT. ANN. § 311:13 (LexisNexis 2023); *Taylor-Boren v. Isaac*, 723 A.2d 577, 580 (N.H. 1998) ("Under RSA 311:13, the trial court may 'determine and enforce' an attorney's fee lien in an equitable proceeding without a jury."); N.J. REV. STAT. § 2A:13-5 (2023); *Musikoff v. Jay Parrino's the Mint, L.L.C.*, 796 A.2d 866, 869 (N.J. 2002) (citing *Martin v. Martin*, 762 A.2d 246, 251 (N.J. Super. Ct. App. Div. 2000)) ("The statute not only codifies the common-law special or charging lien, 'but it also expands the common law lien which had attached only to a judgment.'"); N.Y. JUD. LAW § 475 (LexisNexis 2023); *Cohen v. Grainger, Tesoriero & Bell*, 622 N.E.2d 288, 289 (N.Y. 1993) ("Cohen has a statutory lien which attaches to the recovery notwithstanding that the final judgment was obtained in Federal court."); N.D. CENT. CODE. § 35-20-08 (2023); *First Int'l Bank & Trust v. Peterson*, 797 N.W.2d 316, 324 (N.D. 2011) ("Under N.D.C.C. § 35-20-08(2), an attorney has a lien for a general balance of compensation for each case upon '[m]oney due the attorney's client in the hands of the adverse party, or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed[.]'"); OKLA. STAT. tit. 5, § 6 (2023); *Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.*, 650 P.2d 857, 861 (Okla. 1982) ("This proceeding seeks to enforce the statutory attorney's lien found in 5 O.S. 1971 § 6."); OR. REV. STAT. § 87.445 (2023); *Potter v. Schlesser Co.*, 63 P.3d 1172, 1174 ("Under the statute, an attorney's lien is a charge on (1) actions, suits, and proceedings after the commencement thereof; (2) judgments, decrees, orders, and awards entered therein in the client's favor; and (3) and the proceeds thereof to the extent of fees and compensation specially agreed upon with the client."); 9 R.I. GEN. LAWS § 9-3-2 (2023); *Malinou v. Neri*, 197 A.3d 1282, 1286 n. 4 (R.I. 2018) ("Malinou also raises a question about whether he has an attorney lien on the $100,000 deposited into the registry of the court, as provided in G.L. 1956 § 9-3-2[.]"); S.D. CODIFIED LAWS § 16-18-21 (2023); *Karras v. Alpha Corp.*, 528 N.W.2d 397, 400 (S.D. 1995) ("South Dakota law explicitly allows an attorney to recover fees by operation of an attorney's lien."); TENN. CODE ANN. § 23-2-102 (2023); *Schmitt v. Smith*, 118 S.W.3d 348, 351 (Tenn. 2003) ("The Tennessee General Assembly created a statutory attorney's lien which provides that 'attorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit."); UTAH CODE ANN. § 38-2-7 (LexisNexis 2023); *Dahl v. Dahl*, 345 P.3d 566, 613 (Utah 2015) ("Mr. Christensen relies on section 38-2-7(2) of the Utah Code, which grants attorneys a lien on any money or property owned by the client as security against unpaid fees."); VA. CODE ANN. § 54.1-3932 (2023); *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 880 S.E.2d 786, 788 (Va. 2022) ("[H]er counsel asserted a statutory lien pursuant to Code § 54.1-3932 against any settlement or judgment."); WASH. REV. CODE ANN. § 60.40.010 (LexisNexis 2023); *Ross v. Scannell*, 647 P.2d 1004, 1008 (Wash. 1982) ("This statute, in existence since 1881, provides a delineated and limited statutory attorney's lien designed to be a tool in the collection of fees."); WYO. STAT. ANN. § 29-9-102 (2023); *Bd. of Prof'l Responsibility v. Casper*, 318 P.3d 790, 796 (Wyo.) ("Respondent did not file a lien under the attorney lien statute[.]").

their common law,[126] and three (3) recognize it by both.[127] Two (2) jurisdictions, California and Texas, have recognized an attorney's lien specifically as a part of their contract law.[128] Another

---

[126] *Langerman Law Offices, P.A. v. Glen Eagles at the Princess Resort, LLC*, 204 P.3d 1101, 1103 (Ariz. Ct. App. 2009) (citing 7A C.J.S. *Attorney & Client* § 468 (2008)) ("To establish that it has a common-law charging lien on the judgment, Langerman must demonstrate, at a minimum, that it is owed attorneys' fees under its contingency fee contract with Kilian and that there is some judgment in Kilian's favor to which a charging lien can attach."); *Olszewski v. Jordan*, 109 A.3d 910, 913 (Conn. 2015) ("[Although there is no statutory basis for an attorney's charging lien in Connecticut . . . this court expressly recognized the common-law basis for an attorney's charging lien nearly 180 years ago[.]"); *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem. Hosp., Inc.*, 36 A.3d 336, 341 (Del. 2012) ("We find that the right of an attorney to a charging lien is well established at common law."); *District of Columbia Redevelopment Land Agency v. Dowdey*, 618 A.2d 153, 159 (D.C. 1992) (citing *Elam v. Monarch Life Ins. Co.*, 598 A.2d 1167, 1168 n.2 (D.C. 1991)) ("The District of Columbia has no statute providing for attorney's liens; therefore, their creation or existence are governed by common law rules."); *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986) (citing first *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So.2d 1383 (Fla. 1983); then citing *St. Ana v. Wheeler Mattison Drugs, Inc.*, 129 So.2d 184 (Fla. Dist. Ct. App. 1961)) ("No statutes outline the requirements for valid attorney's liens in Florida. Rather, case law acts as the sole guide for both attorneys and courts as to these liens."); *Dunn v. Bennett*, 846 N.W.2d 75, 81 (Mich. Ct. App. 2014) (quoting *Miller v Detroit Auto Inter-Ins Exch*, 362 NW2d 837, 838 (Mich. Ct. App. 1984)) ("Michigan recognizes a common law attorney's lien on a judgment or fund resulting from the attorney's services."); *Bar-Til, Inc. v. Superior Asphalt, Inc.*, 219 So. 3d 553, 556 (Miss. Ct. App. 2017) ("Mississippi has long recognized an attorney's right to have a lien on judgments and decrees procured through an attorney's efforts on behalf of his client."); *Computer One, Inc. v. Grisham & Lawless P.A.*, 188 P.3d 1175, 1179 (N.M. 2008) (citing *Prichard v. Fulmer*, 159 P. 39, 40 (N.M. 1916)) ("New Mexico does not have a statute providing an attorney with the right to assert a charging lien . . . . Therefore, our courts have looked to common law and principles of equity to determine the rights afforded an attorney by such a lien."); *Clerk of Superior Court v. Guilford Builders Supply Co.*, 361 S.E.2d 115, 118 (N.C. Ct. App. 1987) (citing *Covington v. Rhodes*, 247 S.E.2d 305, 309 (N.C. Ct. App. 1978)) ("The charging lien is an equitable lien which gives an attorney the right to recover his fees 'from a fund recovered by his aid.'"); *Kisling, Nestico & Redick, L.L.C. v. Progressive Max Ins. Co.*, 143 N.E.3d 495, 498 (Ohio 2020) ("Ohio . . . has no statute addressing how and when an attorney's charging lien attaches or how it can be enforced. Instead, in Ohio, charging liens are recognized and enforced under the common law."); *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, PC*, 179 A.3d 1093, 1099 n.6 (Pa. 2018) (citing *Johnson v. Stein*, 385 A.2d 514, 515-16 (Pa. Super. Ct. 1978)) (stating the conditions for a charging lien to be recognized by a court in Pennsylvania); *Eleazer v. Hardaway Concrete Co.*, 315 S.E.2d 174, 177 (S.C. Ct. App. 1984) (citing first *Ex parte Fort In re Boyd v. Lee*, 15 S.E. 332 (S.C. 1892); then citing *Simmons v. Reid*, 9 S.E. 1058 (S.C. 1889); next citing *Miller v. Newell*, 20 S.C. 123 (S.C. 1883); then citing *Scharlock v. Oland*, 30 S.C.L. 207 (S.C. 1845); lastly citing *Massachusetts & Southern Construction Co. v. Township of Gill's Creek*, 48 F. 145 (C.C.D.S.C. 1891)) ("While South Carolina recognizes an attorney's lien created by the common law, the lien protects only costs and disbursements; it does not cover an attorney's fee."); *Estate of Button v. Anderson*, 28 A.2d 404, 406 (Vt. 1942) (citing 5 AM. JUR. 394, § 221; 6 C.J.S. 769, § 366) ("Where the parties have contracted that the attorney shall receive a specified amount of the recovered fund, such agreement will create an equitable lien on the fund in favor of the attorney to the extent of the amount stipulated.").

[127] IND. CODE ANN. § 33-43-4-1 (LexisNexis 2023); *State Farm Mut. Auto. Ins. Co. v. Ken Nunn Law Office*, 977 N.E.2d 971, 975 (Ind. Ct. App. 2012) (citing *Wilson v. Sisters of St. Francis Health Serv. 's Inc.*, 952 N.E.2d 793, 796 (Ind. Ct. App. 2011)) ("With respect to liens available for the protection of attorney fees, Indiana recognizes a lien established by statute and a lien arising in equity."); W. VA. CODE ANN. § 30-2-15 (LexisNexis 2023); *Trickett v. Laurita*, 674 S.E.2d 218, 225 (W.Va. 2009) ("Both the statutory and common law of this State have long recognized an attorney's right to recover his/her unpaid fees by way of a charging lien."); WIS. STAT. § 757.36 (2023); *Stasey v. Stasey*, 483 N.W.2d 221, 231 (Wis. 1992) (citing first *Wurtzinger v. Jacobs*, 148 N.W.2d 86 (Wis. 1967); then *Goldman v. Home Mut. Ins. Co.*, 126 N.W.2d 1 (Wis. 1964); lastly *Liberty v. Liberty*, 276 N.W. 86 (Wis. 1937)) ("This court has recognized the existence, independent of statute, of common law charging liens that secure an attorney's payment from the proceeds of a judgment.").

[128] *Carroll v. Interstate Brands Corp.*, 121 Cal. Rptr. 2d 532, 535 (Cal. Ct. App. 2002) ("In California, an attorney's lien is created only by contract[.]"); *Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, 70 F. Supp. 3d 782, 786

two (2) jurisdictions, Maine and Guam, have left whether the common law recognizes an attorney's charging lien as unsettled.[129] Only Puerto Rico does not recognize an attorney's charging lien.[130] No information on attorney's liens was located for the jurisdictions of the Northern Marianas or American Samoa. Most relevant to the Court's analysis are those jurisdictions that have recognized it through common law.[131]

¶36    A perfunctory counting of which jurisdictions have established the right of an attorney's charging lien and which have not, without a deeper look at the data, would make for a legally anemic analysis. Thus, the Court parses the data further in its inquiry into whether the Virgin Islands should adopt this right into the common law. That the vast majority of other jurisdictions have adopted some form of the attorney's lien through either common law or statute favors the adoption of the attorney's charging lien. That thirty-two (32) chose to codify it in statute, while sixteen (16) have found it based it in the common law, weighs against adopting it through the common law. That three (3) jurisdictions with attorney's lien statutes have nonetheless also found a right to an attorney's lien in the common law weighs slightly in favor of adopting the right in the common law. That only one (1) jurisdiction has expressly disavowed the adoption of an attorney's charging lien at all also weighs in favor of its adoption. Ultimately, this prong weighs in favor of recognizing an attorney's charging lien.

### 3.    Best rule for the Virgin Islands

¶37    The Court is only asked to consider here the attorney's charging lien, and thus will save an analysis of whether or how to adopt the attorney's retaining lien for a later, more appropriate case. While the two (2) prongs above favor adoption, a mechanistic counting of the majority position or prior Restatement-based Virgin Islands decisions would simply result in formally adopting the Restatement again, as the Restatement usually just reflects the majority position, and the Restatement was the basis of the previous Virgin Islands court decisions. The Court here considers what unique aspects of the Virgin Islands, and our territorial jurisprudence, may necessitate a modification of or deviation from the majority view. Indeed, Puerto Rico, with whom this Territory is are close to physically, historically, and culturally,[132] has chosen to so far not adopt this right

---

(E.D. Tex. 2014) ("So while there is no common law charging lien granted to an attorney as a matter of right, the Texas courts have recognized with approval situations where attorneys have acquired a charging lien through an express contract[.]").

[129] *Peter v. Gill*, No. CV0426-18, 2019 Guam Trial Order LEXIS 221, at *11 (Guam Super. Ct. 2019) ("As there are no Guam statutes granting liens to secure a lawyer's fees, the Court looks to common law or contract law."); *Libner v. Me. County Comm'rs Ass'n*, 845 A.2d 570, 573 ("We need not reach Libner's argument because, assuming that attorney fee liens exist at common law or in equity in Maine such a lien could not be imposed in the absence of timely, direct notice of the nature of the lien and its source to the carrier or fund.").

[130] *In re Velez*, 103 D.P.R. 590 (P.R. 1975) ("It is proper to reaffirm the rule that in Puerto Rico an attorney is not entitled to withhold the client's documents and papers, as well as there does not exist an attorney's lien on the judgment money obtained in a suit."); *Salls v. Superior Court of P.R.*, 96 D.P.R. 253 (P.R. 1968) ("This lien, which stems from the English common law, is sanctioned in various state jurisdictions but the necessary statutes have been approved for that purpose . . . . There does not exist in Puerto Rico any statutory provision on that point.").

[131] *Willie v. Amerada Hess Corp.*, 66 V.I. 23, 64 (V.I. Super. Ct. 2017) (citing *Malloy v. Reyes*, 61 V.I. 163, 177 (V.I. 2014)) ("Ordinarily, a *Banks* analysis is limited to decisions construing and applying common law, not statutory law.").

[132] In 1964, the Governor and the Legislature of the Virgin Islands declared the second Monday of October each year

either through statute or common law at all.

¶38     Contingency fees allow those who could not otherwise hire a lawyer or seek recompense for wrongs gain access to a courtroom.[133] According to the 2020 census, the U.S. Virgin Islands has a median household income of $40,408 and 18.6% of Virgin Islands families live in poverty.[134] Yet Virgin Islanders are nonetheless subjected to torts, crimes, and other misfortunes such as vehicular accidents, medical malpractice, fraud and wrongful death claims—all of which can be costly to litigate.

¶39     Attorneys are needed to litigate these disputes. As the instant case illustrates, nonpayment of fees and other attorney fee disputes are as prevalent in the Virgin Islands as any other jurisdiction.[135] An attorney's charging lien would benefit not only attorneys, but the public-at-large by assuring attorneys who take cases that they will not be left 'holding the bag' after expending reasonable effort, time, and resources to assist a client in perfecting.[136] An attorney who has no need to worry whether he or she will be 'dropped at the courthouse steps' by a client after significant work in securing a judgment, or who need not worry that his or her client will take their judgment and skip town, is an attorney more likely and willing to take cases and represent a wider range of clients. As the Restatement (Third) of the Law Governing Lawyers states in its comments on the rationale of charging liens:

> Especially when the client has no other assets and the lawyer is receiving a contingent fee, the charging lien gives the lawyer important assurance that the fee and disbursements will actually be paid. It thus makes it easier for people to secure competent representation when they have small means and meritorious claims.[137]

¶40     While the Legislature of the Virgin Islands may certainly craft an attorney's charging lien statute, the Court sees no reason to not recognize the right through common law. By recognizing

---

to be Virgin Islands-Puerto Rico Friendship Day. *See Holidays*, V.I. COURTS, https://www.vicourts.org/about_us/overview_of_judiciary_of_the_virgin_islands/holidays (last visited Aug. 8, 2023); *A Celebration of Holidays*, V.I. DEPT. OF EDUC., https://vide.vi/documents/general/441-october2015-holidays-celebration/file.html (last visited Aug. 8, 2023).

[133] *See* John N. Tye & Morgan W. Williams, *Networks and Norms: Social Justice Lawyering and Social Capital In Post-Katrina New Orleans*, 44 HARV. C.R.-C.L. L. REV. 255, 268 (2009) (noting that, in post-Hurricane Katrina New Orleans, the availability of significant contingency fees has allowed some to seek social justice who would not have otherwise been able to); *see also* Steven Susser, *General: Contingency and Referral Fees For Business Disputes: A Primer*, 90 MICH. BAR J. 35 (2011) ("Many attorneys assume that contingency fee arrangements are best reserved for medical-malpractice and personal-injury cases. But, in reality, contingency fees are appropriate in all situations, including commercial litigation.").

[134] U.S. CENSUS BUREAU, *2020 Island Areas Censuses Data on Demographic, Social, Economic and Housing Characteristics Now Available for the U.S. Virgin Islands*, https://www.census.gov/newsroom/press-releases/2022/2020-island-areas-us-virgin-islands.html (last revised Oct. 21, 2022).

[135] *See, e.g., Gov't of the V.I. v. John K. Dema, P.C.*, 2020 VI Super 19 (dismissing for lack of jurisdiction a fee dispute case between the Government of the Virgin Islands and an attorney).

[136] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 cmt. d (2000) ("If the client were given the disputed sum, the money might be dissipated before the lawyer could secure a remedy.").

[137] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 cmt. d (2000).

the right now, Virgin Islanders and their attorneys are secure whether the Virgin Islands Legislature choose to craft a charging lien statute or not. Thus, the best rule for the Virgin Islands would be the adoption of an attorney's charging lien into its common law. Having decided to adopt the right, the Court now considers the contours of that right.

¶41    The Restatement (Third) of the Law Governing Lawyers § 43(2) provides an initial starting point. Section 43(2) provides:

> (2) Unless otherwise provided by statute or rule, client and lawyer may agree that the lawyer shall have a security interest in property of the client recovered for the client through the lawyer's efforts, as follows:
>
> (a) the lawyer may contract in writing with the client for a lien on the proceeds of the representation to secure payment for the lawyer's services and disbursements in that matter;
>
> (b) the lien becomes binding on a third party when the party has notice of the lien;
>
> (c) the lien applies only to the amount of fees and disbursements claimed reasonably and in good faith for the lawyer's services performed in the representation; and
>
> (d) the lawyer may not unreasonably impede the speedy and inexpensive resolution of any dispute concerning those fees and disbursements or the lien.[138]

¶42    Additionally, § 43(3) states that: "(3) A tribunal where an action is pending may in its discretion adjudicate any fee or other dispute concerning a lien asserted by a lawyer on property of a party to the action . . . and grant such other relief as justice may require."[139]

¶43    The Court concurs that the first portion of this section is advisable—the common law right shall control in the absence of a statute or adoption of a rule, but once crafted, the statute or rule shall control. The next question is whether the lien should arise automatically or by agreement, and whether that agreement need be express, implied, or in writing.[140] While an automatic lien

---

[138] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43(2) (2000).

[139] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43(3) (2000).

[140] *Compare Heckadon v. Universal Underwriters Ins. Co.*, 586 S.W.3d 789 (Mo. Ct. App. 2019) (citing *Wright v. Bartimus Frickleton Robertson & Gorny PC*, 364 S.W.3d 558, 566 (Mo. Ct. App. 2011)) ("[A]n attorney's lien automatically attaches from the commencement of an action or the service of an answer containing a counterclaim. 'No notice of [a] lien [is] necessary after suit [is] filed, and summons served' if the attorney claiming the lien brought the suit and appeared in the case."); *and In re Marriage of Voshell*, No. 32968-9-II, 2006 Wash. App. LEXIS 1146, at *5 (Wash. Ct. App. 2006) (unpublished) ("Baum's appeal involves interpreting the attorney lien statute, RCW 60.40.010, which gives an attorney an automatic lien for his compensation on the client's papers, on the client's money in the attorney's hands, and on the client's recovery from another party."); *with Cetenko v. United California Bank*, 638 P.2d 1299, 1301 (Cal. 1982) (citations omitted) ("A lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his client for legal services rendered has been recognized in numerous cases. Such a lien may be

may be more efficient, the Court views that creation by a written agreement is the better choice for the Virgin Islands. An agreement assures that the client and the attorney are on the same page, reducing attorney-client friction.

¶44    Further, the burden on attorneys to draft an agreement is negligible, as attorneys are sophisticated agents capable of crafting either express contractual agreements or standard clause language for retainer agreements. As comment (e) to § 43 points out, "[t]he requirement of a writing also permits third parties to verify the lien's existence and provisions."[141] The agreement itself "need not specify the amount of the fee, which is often unknown in advance, and need not use the word 'lien.' However, it must make clear that the lawyer will be entitled to part of the proceeds of the action to pay the lawyer's fee."[142] The Court also concludes that the requirement that notice must be given to a third-party for that party to be bound is a sound and sensible requirement.

¶45    Next, the Court considers whether the lien goes into effect prior to commencement of the action, at commencement of the action, or at judgment.[143] As the Court has adopted a written agreement and notice requirement for the attorney's charging lien, the best rule would be that the lien does not arise until suit has been filed. This approach will give attorneys time to effectuate notice, perfect the lien, and provides some elasticity to adapt to changing circumstances by providing time for attorneys and clients to modify the lien agreement prior to judgment. The Court also finds that the requirement that fees be measured in good faith, are reasonable, and are for services actually performed by the attorney, to be practical and sensible for the Virgin Islands, as well as the requirement that the attorney not act unreasonably in impeding the disbursement of fees. Lastly, it is efficient and prudent that the tribunal which adjudicates the fee dispute or lien issue may be the same tribunal where the action is pending or where judgment was received.[144]

¶46    Therefore, the Court will adopt the following requirements, largely following § 43, as the common law for an attorney's charging lien: (1) Absent any statute or rule to the contrary of one or more elements of this right, which shall then control, (2) an attorney and client may arrange by express or implied written agreement that (3) the attorney shall have a lien for payment of costs and fees on the judgment, settlement, or other recovery of a client (4) in an amount not to exceed

---

created either by express contract, as in the present case . . . or it may be implied if the retainer agreement between the lawyer and client indicates that the former is to look to the judgment for payment of his fee[.]"); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 cmt. d (2000) ("The provisions of this Section apply in the absence of a statute or rule providing otherwise. Not all safeguards required by the Section are required in all jurisdictions, many of which, for example, recognize a charging lien without a contract.").

[141] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 43 cmt. e (2000).

[142] *Id.*

[143] *Compare* N.J. REV. STAT. § 2A:13-5 (2023) (lien arises at filing of complaint); *with* 770 ILL. COMP. STAT. ANN. 5/1 (LexisNexis 2023) (suit need not be commenced for lien to arise); *and* IND. CODE ANN. § 33-43-4-1 (LexisNexis 2023) (lien attaches at judgment); *also see In re Marriage of Voshell*, 2006 Wash. App. LEXIS 1146, at *5 (Wash Ct. App. 2006) (unpublished) (emphasis in original) (citing first *Wilson v. Henkle*, 724 P.2d 1069, 1074 (Wash. Ct. App. 1986); then *Suleiman v. Cantino*, 656 P.2d 1122, 1124 (Wash. Ct. App. 1983)) ("The attorney lien statute only gives the attorney a lien on money from an action when the client *receives* a judgment in his favor.").

[144] The use of "may" indicates that this is permissive, but not mandatory. Fee disputes may of course also be resolved in other ways, such as by mediation or by the Virgin Islands Supreme Court Office of Disciplinary Counsel.

what is asserted in good faith and reasonable for work actually performed (5) and this lien takes effect at the commencement of the action. Further, the attorney must (6) file and provide notice to any third-party for the lien to be enforceable against that third-party and (7) may not unreasonably impede any dispute regarding those fees or the lien. Lastly, (8) the court or other tribunal in which judgment was received or, if settled, the case was commenced, may adjudicate any fee or lien dispute.

¶47    Thus, to bring an action to recover fees via attorney's charging lien an attorney must have: (1) a written agreement with a client; (2) there must have been a settlement or judgment; (3) there must be nonpayment of the attorney's reasonable fees and costs; and (4) there must have been notice given to any relevant third-parties.

## C. ANALYSIS

¶48    In the instant case, there has been a settlement, nonpayment, and notice given. The questions before the Court are whether KFK modified its written agreement for the charging lien to extend only "if damages were awarded" to simply if there was "any recovery," and whether KFK's purported fees are reasonable.

### A. The Court declines to affirmatively rule whether KFK's lien was modified to extend to "any recovery" absent a damages award

¶49    KFK has both a written, signed, contract with Go Fast asserting a lien and subsequent emails purporting to modify this agreement.[145] Go Fast asserts its understanding and the plain language of the contract is that the lien was based on the condition that it was awarded damages. KFK asserts that the contract clearly and unambiguously shows that it was negotiating a lien on any recovery. KFK's first email from Attorney Erika Kellerhals on July 2, 2014, at 11:05 a.m. states that the negotiated bill reduction is "without prejudice to our previously agreed to 5% lien on any recovery in the case" however the previously agreed to five percent (5%) lien was if damages were awarded, not merely any recovery.[146] This same email then reiterates that "no further payment will be due to [KFK] aside from the 5% lien on recovery."[147]

¶50    Go Fast then seeks to clarify the lien in a follow-up email on July 2, 2014, at 12:33 p.m. where Sabers writes: "Erika, that 5% fee includes Leigh Fletcher or (two and a half percent) per firm, or any arrangement that you may have with Leigh doesn't exceed the 5 percent. I want that spelled [sic] since you have parted ways with Leigh."[148] Go Fast does not at this point clarify the discrepancy between the previously agreed lien language with the conditional, "if damages are awarded," and the new language speaking simply of "any recovery." Viewing these facts in a light most favorable to the nonmoving party, it is evident the agreement is not at this stage "clear on its

---

[145] While Go Fast attempts to argue that KFK is in violation of Supreme Court Rule 211.1.5(c), Ex. A of KFK's Summary Judgment Motion and Exhibit 3 of Go Fast's Motion To Strike does contain a signed engagement letter with the five percent (5%) contingency fee lien.

[146] Reply & Opp'n 6.

[147] Reply & Opp'n 6.

[148] Reply & Opp'n 5.

surface," as Go Fast needs to further clarify the lien language.

¶51    Kellerhals replies on the same day at 12:51 p.m. that KFK is discounting the bill and "[a]s discussed previously, this discount is without prejudice to our previously agreed upon 5% lien on any recovery in the case, which we will still retain" and that payment is solely to KFK which had "made arrangements with Leigh Fletcher with respect to that recovery."[149] KFK also states in their Reply that Attorney Kroblin explained to Sabers that the lien was only on five percent (5%) of any recovery and not on all recovery as indicated in the Notice filed on July 16, 2014, although no evidence or testimony about this call is in the record aside from the pleadings.

¶52    The Court views KFK's laches argument as a potential bar to Go Fast's current objections to the lien. However, summary judgment on that issue is not appropriate as viewing all the evidence in a light most favorable to Go Fast, the agreement here could be construed as ambiguous and thus Go Fast's understanding of the lien—that it was triggered only if there was an award of damages— might excuse the delay or other otherwise indicate that there was no voluntary or intentional waiver. Thus, the Court declines to rule at this stage that Go Fast's objections are barred by the doctrine of laches.

¶53    While it appears to the Court from the above exchanges and evidence that KFK and Go Fast had modified their initial agreement to include a five percent (5%) lien simply on "any recovery," the Court declines to rule on the issue now as there also exists a genuine dispute over the reasonableness of the fee amount, as discussed below. The Court will allow the parties to submit further evidence, testimony, argument, and legal analysis on the issue of whether the lien agreement was modified, should they desire, at a hearing before ruling conclusively that the lien agreement was or was not modified from a lien solely on potential damages to a lien on any recovery.[150] Accordingly, the Court declines to strike the attorney's lien pending an evidentiary hearing.

### B.    There exists a genuine dispute over the reasonableness of KFK's contingent fee for work performed on the case

¶54    Reasonableness is a question of fact.[151] The parties dispute whether the settlement proceeds were procured in part through KFK's efforts and the reasonableness of KFK's claim for 5% of the settlement amount. Although KFK argues that the reasonableness of its fees should not be subjected to the "normal scrutiny given to contingency fee agreements," KFK provides no legal basis or citations for this proposition and the Court does not see why that should be the case.[152] The original agreement consisted of an hourly fee arrangement and a five percent (5%) contingency fee on any recovery if damages were awarded. The purportedly modified agreement contained a lien on "any recovery" and provided a discount on outstanding fees with KFK bearing the risk of no recovery.

---

[149] Reply & Opp'n 5.

[150] V.I. R. Civ. P. 78 ("A court may establish regular times and places for oral hearings on motions.").

[151] *See Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 537 (V.I. 2013) (citing cases where reasonableness is a question of fact).

[152] Reply & Opp'n 11.

¶55     KFK was brought in after two (2) years and conducted discovery work such as: privilege log review; responding to requests for production; review of disclosures; preparing for and conducting depositions; acquiring expert comments on the Coastal Zone Management Plan; locating and interviewing witnesses; acquiring an expert environmental report; review of bank documents; as well as other legal work such as: document review; legal research related to damages; work on remediation plans; notice and motion drafting and filing; conducting mediation; telephone conferences with client, witnesses, and others; coordinating with other and opposing counsel; and crafting litigation strategy.[153]

¶56     Go Fast's newly retained counsel and KFK clearly had different theories of the case and views on what the potential payout from the case was. When Go Fast's new counsel was brought in, Go Fast's new counsel applied a different theory of the case, conducted their own discovery, and eventually did reach a settlement. Go Fast asserts that the work KFK claims to have done was not material in assisting Go Fast in obtaining its settlement. Additionally, simply because replacement counsel was successful in reaching a settlement does not mean that KFK's fees are necessarily reasonable or unreasonable, but it does draw the reasonableness of KFK's fees into question. Go Fast contends that KFK has not analyzed its fees under any of the eight (8) factors provided for in the Virgin Islands Rule of Professional Conduct 211.1.5(a), and the Court agrees that such an analysis would prove more beneficial in reviewing the reasonableness of KFK's fee. These eight (8) factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.[154]

¶57     Taking the above facts in a light most favorable to the nonmoving party, the Court finds summary judgment to be inappropriate as there exists a material factual dispute over: (1) whether the settlement was procured in part through KFK's reasonable efforts; and (2) the reasonableness of the fee amount. The Court will hold a hearing at which KFK and Go Fast may submit evidence and argument to determine the extent that KFK's efforts secured the settlement and the reasonableness of KFK's fees.

---

[153] Summ. J. Mot. Ex. E.

[154] V.I. R. PROF. CONDUCT 211.1.5(a).

## D. **CONCLUSION**

¶58    This current matter arises out of a dispute between attorneys over monies obtained by Go Fast in a settlement between Go Fast and Texaco Caribbean, Inc. Go Fast filed suit against Texaco on November 29, 2010, due to oil leakages from storage, distribution, and pumping equipment operated by Texaco at a marina run by Go Fast. The suit was dismissed by the Court on July 11, 2017, as the parties had come to a resolution. Go Fast sought to reopen the case on April 19, 2018, for the limited purpose of adjudicating an attorney's lien, which was leveraged on the settlement by Go Fast's former counsel KFK on July 16, 2014. The case was reopened on May 16, 2018, for the purpose of clarifying the attorney's lien placed by KFK. KFK filed a Summary Judgment Motion on August 14, 2018, and Go Fast filed a Motion To Strike on December 4, 2018. Prior to the resolution of this case, the Court ordered the parties to submit *Banks* briefs on the common law right of an attorney's lien, which were provided on October 24, 2022.

¶59    After conducting a *Banks* analysis the Court concluded that the common law right of an attorney's lien should be adopted in the Virgin Islands. Viewing the record and facts in a light most favorable to the nonmoving party, the Court declines to grant summary judgment or strike the attorney's lien, as there exists a genuine dispute over whether KFK's efforts helped secure the settlement and whether KFK's fee is reasonable. The Court will hold an evidentiary hearing to allow KFK and Go Fast to present evidence as to whether: (1) the original lien agreement was modified; (2) KFK's efforts helped secure the settlement and (3) KFK's fee is reasonable.

An Order consistent with this Memorandum Opinion follows.

DATED: October 11 , 2023

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

**TAMARA CHARLES**
Clerk of the Court

BY: _____
    **LATOYA CAMACHO**
    Court Clerk Supervisor 10 / 16 / 23